**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:10cv383**

| | | |
|---|---|---|
| **MARK BRODY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **Vs.** | ) | **MEMORANDUM** |
| | ) | **OF DECISION** |
| **NORTH CAROLINA STATE** | ) | |
| **BOARD OF ELECTIONS; GARY** | ) | |
| **O. BARTLETT as Director,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the court on defendants' Motion to Dismiss (#5). Having considered defendants' motion, plaintiff's response, and the pleadings of record, and having conducted a hearing, the court enters the following findings, conclusions, and Order dismissing this action.

### FINDINGS AND CONCLUSIONS

**I.  Background**

    **A.  Nature of the Action**

In this action, plaintiff seeks to have this court declare that a number of North Carolina statutes violate the First and Fourteenth Amendments of the United States Constitution: the statute governing appointments to the State Board of Elections, N.C. Gen. Stat. § 163-19; the statute concerning copies of the statewide voter registration file, § 163-82.13; the statute defining the term "political party," § 163-96; the statute governing

ballot qualification of unaffiliated candidates, § 163-122; and the statutes governing the election fund §§ 163-278.41 -.45 & 105-159.1.  Plaintiff further seeks injunctive relief barring the State Board or its Executive Director from enforcing the challenged statutes and mandating that plaintiff's name be placed on the ballot for the November 2, 2010, general election for North Carolina State House District 103, which has now passed.  Defendants are the North Carolina State Board of Elections and its executive director Gary O. Bartlett, who is sued in his official capacity. Complaint ¶ 3. The State Board has supervisory authority over all the elections in North Carolina. § 163-22(a); Complaint ¶ 3.

### B.    Facts Relevant to the Pending Motion

In 2008, plaintiff earned a place on the November 2008 election ballot in Mecklenburg County for the N.C. State House of Representatives District 103 seat through the petition process set out in N.C. Gen. Stat. § 163-122. Complaint ¶ 12. In the November 2008 election, plaintiff received 30.63% of the votes cast for that office. Complaint ¶ 13. At the direction of the State Board of Elections staff, in 2010 the Mecklenburg County Board of Elections rejected plaintiff's filing fee and denied his request to be placed on the November 2, 2010, ballot for the N.C. State House of Representatives District 103 seat because he had not complied with the petition requirements of N.C. Gen. Stat. §163-122(a)(3). Complaint ¶ 6.

Plaintiff and his wife filed a complaint with the Mecklenburg County Superior Court on February 11, 2010, seeking a declaratory judgment that Mr. Brody had "ballot retention" rights in 2010 because he had successfully gained ballot access in 2008. They sought a

declaration that N.C. Gen. Stat. §163-122 was unconstitutional on its face. They also sought a declaration that the North Carolina Political Parties Financing Fund (hereinafter "Fund") was unconstitutional because unaffiliated candidates are not eligible to receive funds from it. They requested that Mr. Brody be declared a candidate for House District 103 in 2010's November election. They also requested the state court to rule that unaffiliated candidates who succeeded in qualifying for the ballot should be treated as qualified candidates for the same seat in consecutive elections if they received the same percentage of votes required of political parties in § 163-96(a). All of these claims were made under the provisions of the North Carolina Constitution rather than the United States Constitution. Their complaint was dismissed by the Honorable Timothy L. Patti, North Carolina Superior Court Judge, on May 20, 2010, and their requests for a stay and writ of *supersedeas* pending appeal were denied by the North Carolina Court of Appeals, although the appeal is still pending.

Since filing this action, the 2010 election has passed and plaintiff has moved his residence to another house district. Defendants have moved to dismiss pursuant to Rule 12(b)(1), (3), & (6), Federal Rules of Civil Procedure.

## II.    Applicable Standards

### A.    Rule 12(b)(1) Standard

Rule 12(b)(1) provides for dismissal where the court lacks jurisdiction over the subject matter of the lawsuit. Lack of subject-matter jurisdiction may be raised at any time either by a litigant or the court. <u>Mansfield, C. & L.M.R. Co. v. Swan</u>, 111 U.S. 379, 382 (1884). The ability of the court to independently address subject-matter jurisdiction is important to

finality inasmuch as a litigant, even one who remains silent on the issue of jurisdiction, may wait until they receive an adverse judgment from a district court and raise the issue of subject-matter jurisdiction for the first time on appeal, thereby voiding the judgment. Capron v. Van Noorden, 2 Cranch 126, 127, 2 L.Ed. 229 (1804). The Federal Rules of Civil Procedure anticipate this issue and provide that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed.R.Civ.P. 12(h)(3).

When a court considers its subject-matter jurisdiction, the burden of proof is on the plaintiff. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). In Richmond, Fredricksburg & Potomac R.R. Co. V. United States, 945 F.2d 765 (4th Cir. 1991) (Ervin, C.J.), the Court of Appeals for the Fourth Circuit held, as follows

> In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment. Id.; Trentacosta v. Frontier Pacific Aircraft Indus., 813 F.2d 1553, 1558 (9th Cir.1987). The district court should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists. Trentacosta, supra, 813 F.2d at 1559 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986)). The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. Trentacosta, supra, 813 F.2d at 1558. A district court order dismissing a case on the grounds that the undisputed facts establish a lack of subject matter jurisdiction is a legal determination subject to de novo appellate review. Revene v. Charles County Comm'rs, 882 F.2d 870, 872 (4th Cir.1989); Shultz v. Dept. of the Army, 886 F.2d 1157, 1159 (9th Cir.1989).

Id., at 768-69. Where jurisdictional facts are intertwined with facts central to the substance

of a case, a court must find that jurisdiction exists and consider and resolve the jurisdictional objection as a direct attack on the merits of the case. <u>United States v. North Carolina</u>, 180 F.3d 574, 580 (4th Cir. 1999).

**B.  Rule 12(b)(3) Standard**

In accordance with Rule 12(b)(3), a court may dismiss a complaint for improper venue or transfer venue to a court where it could have been brought. 28 U.S.C. § 1406(a).

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

28 U.S.C. § 1406(a). When considering a motion to dismiss for improper venue, a court must accept the facts alleged in the complaint as true and must draw all reasonable inferences in the plaintiff's favor. <u>Micromuse, Inc. v. Aprisma Management Technologies, Inc.</u>, 2005 WL 1241924, *2 (S.D.N.Y. 2005).[1]

**C.  Rule 12(b)(6) Standard**

Until recently, a complaint could not be dismissed under Rule 12(b)(6) unless it appeared certain that plaintiff could prove no set of facts which would support its claim and entitle it to relief. <u>Neitzke v. Williams</u>, 490 U.S. 319 (1989); <u>Conley v. Gibson</u>, 355 U.S. 41 (1957). This "no set of facts" standard has been specifically abrogated by the Supreme Court in recent decisions.

First, in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), the Court held that the

---

[1]    Due to limits of electronic case filing, a copy of such unpublished opinion is incorporated into the electronic record through reference to the Westlaw citation.

"no set of facts" standard first espoused in <u>Conley</u>, <u>supra</u>, only describes the "breadth of opportunity to prove what an adequate complaint claims, not the minimum adequate pleading to govern a complaint's survival." <u>Id.</u>, at 563. The Court specifically rejected use of the "no set of facts" standard because such standard would improperly allow a "wholly conclusory statement of claim" to "survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." <u>Id.</u>, at 561 (alteration in original).

Post <u>Twombly</u>, to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts in their complaint that "raise a right to relief above the speculative level." <u>Id.</u>, at 555.

> [A] plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . .

<u>Id.</u> (second alteration in original; citation omitted). Further, a complaint will not survive Rule 12(b)(6) review where it contains "naked assertion[s] devoid of further factual enhancement." <u>Id.</u>, at 557. Instead, a plaintiff must now plead sufficient facts to state a claim for relief that is "*plausible* on its face." <u>Id.</u>, at 570 (emphasis added).

While the Court was clear in <u>Twombly</u> that <u>Conley</u> was no longer controlling, <u>see</u> <u>Twombly</u>, 550 U.S. at 563, and <u>Felman Production Inc. v. Bannai</u>, 2007 WL 3244638, at *4 (S.D.W.Va. 2007), it again visited the Rule 12(b)(6) pleading standard in <u>Ashcroft v. Iqbal</u>, ___ U.S. ___, 129 S.Ct. 1937 (May 18, 2009). In <u>Iqbal</u>, the Court determined that Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Id.</u>, S.Ct., at 1949. The Court explained that, "to survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible*

on its face.'" Id. (citing Twombly, supra; emphasis added). What is plausible is defined by

the Court:

> [a] claim has facial plausibility when the plaintiff pleads sufficient factual
> content that allows the court to draw the reasonable inference that the
> defendant is liable for the misconduct alleged.

Id. This "plausibility standard" requires "more than a sheer possibility that a defendant has

acted unlawfully." Id. Thus, a complaint falls short of the plausibility standard where a

plaintiff pleads "facts that are 'merely consistent with' a defendant's liability . . . ." Id.

While the court accepts plausible factual allegations made in a complaint as true and

considers those facts in the light most favorable to plaintiff in ruling on a motion to dismiss,

a court "need not accept as true unwarranted inferences, unreasonable conclusions, or

arguments." Eastern Shore Mkt.'s Inc. v. J.D. Assoc.'s, LLP, 213 F. 3d 175, 180 (4th Cir.

2000).

In sum, when ruling on a Rule 12(b)(6) motion, "a judge must accept as true all of the

factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007)

(*per curiam*) (citations omitted). A complaint "need only give the defendant fair notice of

what the claim is and the grounds upon which it rests." Id., at 93 (alteration and internal

quotation marks omitted). However, to survive a motion to dismiss, the complaint must

"state[ ] a plausible claim for relief" that "permit[s] the court to infer more than the mere

possibility of misconduct" based upon "its judicial experience and common sense." Iqbal,

129 S. Ct. at 1950. While a plaintiff is not required to plead facts that constitute a *prima*

*facie* case in order to survive a motion to dismiss, see Swierkiewicz v. Sorema N.A., 534

U.S. 506, 510-15 (2002), "[f]actual allegations must be enough to raise a right to relief above

the speculative level," Twombly, 550 U.S. at 555.

### D.     Pro Se Litigants

Although district courts must liberally construe *pro se* complaints, courts cannot act as the

*pro se* plaintiff's advocate and cannot develop claims which the plaintiff failed to clearly raise on

the face of the Complaint. Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978) (recognizing that

district courts are not expected to assume the role of advocate for the pro se plaintiff). See also

Brock v. Carroll, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); Beaudett v. City of

Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). As a result, even a *pro se* plaintiff's basis for relief

"requires more than labels and conclusions...." Twombly, 550 U.S. at 555.  Like plaintiffs who are

represented by counsel, a *pro se* plaintiff must still "allege facts sufficient to state all the elements

of [the] claim." Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003). In light

of Twombly and Bass, conclusory statements with insufficient factual allegations, even when

asserted by *pro se* plaintiffs, will simply not suffice.

## III.   Discussion

### A.     Defendants' Venue Challenge

Under Rule 12(b)(3), defendants contend that plaintiff should have brought this action

in the Eastern District of North Carolina, where the State Board is situate.   For relief,

defendants request that this action either be dismissed or transferred to that district.

Honorable Richard L. Voorhees, United States District Judge, denied an identical motion in

Greene v. Bartlette, 2008 WL 4223691 (W.D.N.C. Sept. 9, 2008), holding:

For purposes of Subsection 1391(b)(2), Defendants ask the Court to focus on the activities of the Defendants rather than the Plaintiffs.1 However, this view has been criticized as placing too much emphasis on the "contacts" of a defendant to a forum rather than the significance of the acts to the cause of action. *See e.g.*, 32A Am. Jur. 2d Federal Courts §1181 ("When material acts or omissions within the forum bear a close nexus to the claims, they are properly deemed "significant" and, thus, substantial.") (*citing Daniel Am. Bd. of Emergency Med.*, 428 F.3d 408, 431-35 (2nd Cir.2005)). "[I]n determining whether events or omissions are sufficiently substantial to support venue under the amended statute, a court should not focus only on those matters that are in dispute or that directly led to the filing of the action." Mitrano, 377 F.3d at 405 (internal citation omitted). Rather, the Court is directed to review "the entire sequence of events underlying the claim." Id. (internal citations omitted).

Here, in addition to the basis for venue identified by Defendants, both sides identify "substantial" activities and omissions that either have occurred, or will occur (depending on the outcome of the case) in both districts. Much of Plaintiffs' efforts thus far at satisfying N.C. GEN. STAT. §163-122(a)(2) have taken place within the Western District. Moreover, because Plaintiff Greene seeks to represent North Carolina's Tenth Congressional District, there is certainly a nexus between Plaintiffs' cause of action and the federal judicial district that encompasses the Tenth Congressional District. However, Plaintiff Greene's proposed candidacy was denied certification as a result of official action by the State Board of Elections within the Eastern District. These facts tend to show that venue is proper in either district. For this reason, Defendants' Rule 12(b)(3) motion to dismiss must be denied.

Finally, although Defendants do not seek a discretionary transfer of venue under 28 U.S.C. §1404(a), Plaintiffs' choice of forum is due some deference since venue is, in fact, proper in the selected forum. See Prac. Guide Fed. Civ. Proc. Before Trial (Nat. Ed.) Ch. 4 - D §4:311 (noting that under §1391(b)(2), plaintiff can select any district in which a "substantial part" of the litigation occurred).

Id., at *2 (footnotes omitted).[2] Finding venue to be proper in either district and that plaintiff

still resides within the Western District of North Carolina, the court will deny defendants'

Rule 12(b)(3) motion as venue is properly laid in this district.

---

[2]     Judge Voorhees handled preliminary motions in <u>Greene</u> while Judge Mullen disposed of the <u>Greene</u> case as discussed <u>infra</u>.

## B. Eleventh Amendment Immunity and Failure to State a Cognizable Claim

Defendants have asserted immunity from suit and moved to dismiss this action under Rule 12(b)(1) and Rule 12(b)(6). As shown below, the analysis under either rule is nearly identical and pivots on whether plaintiff's claims are "insubstantial and frivolous."

"[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) (internal citations omitted). Nevertheless, "the Eleventh Amendment does not preclude private individuals from bringing suit against State officials for prospective injunctive or declaratory relief designed to remedy ongoing violations of federal law." Bragg v. West Virginia Coal Association, 248 F.3d 275, 292 (4th Cir. 2001) (citing Ex parte Young, 209 U.S. 123 (1908) and DeBauche v. Trani, 191 F.3d 466, 505 (4th Cir. 1999)). "Although the *Ex parte Young* exception to the Eleventh Amendment is well established, its precise contours are not." Bragg, 248 F.3d at 292. The Fourth Circuit explained in Bragg:

> [A]pplication of the doctrine must entail more than "a reflexive reliance on an obvious fiction." *Couer d'Alene Tribe*, 521 U.S. at 270. "Just because a private citizen's federal suit seeks declaratory injunctive relief against State officials does not mean that it must automatically be allowed to proceed under an exception to the Eleventh Amendment protection." *Bell Atl. Md., Inc. V. MCI Worldcom, Inc.*, 240 F.3d 279, 294 (4th Cir. 2001). "Such 'empty formalism' would improperly sacrifice the 'real interests served by the Eleventh Amendment.'" *Id.* (quoting [Idaho v. Coeur d'Alene Tribe, 521 U.S. 261, 270, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997)(opinion of Kennedy, J.).] Rather, just as the Court did in *Coeur d'Alene Tribe*, we must evaluate the degree to which a State's sovereign interest would be adversely affected by a federal suit seeking injunctive relief against State officials, as well as the extent to which federal, rather than State, law must be enforced to vindicate the federal

interest.

Id., at 293.

In his response, plaintiff states that he is only seeking prospective injunctive or declaratory relief. Plaintiff is suing Defendant Bartlett in his official capacity. Complaint, ¶ 5. He contends that defendants erred by refusing (1) to place his name on the ballot in 2010 after he gained ballot access through the petition process in 2008 and received more than 2% of the votes; (2) to denominate him on the ballot in 2008 and 2010 as an "independent" candidate rather than an "unaffiliated" candidate; and (3) to allow him a portion of the proceeds of funds taxpayers designated for political parties. He also contends that North Carolina statutes do not treat unaffiliated voters the same as political parties in that only the two largest political parties may nominate persons to serve on the State and county boards of elections and that the statutes impermissibly base the number of petition signatures required on the number of registered voters, while districts are determined by the population. Plaintiff claims that these provisions violate the First and Fourteenth Amendments of the United States Constitution. Complaint, ¶¶ 29-31. Plaintiff does not, however, allege how the statutes as administered by the State Board and Mr. Bartlett violate these provisions or have prevented him from obtaining a place on the ballot for the North Carolina State House of Representatives. He fails to specify how his First Amendment rights have been violated or how he is treated differently from similarly situated candidates. He does not indicate the standard of scrutiny that he believes applicable to his Equal Protection claim. Further, he points to no statutory scheme by which North Carolina has waived its right to assert Eleventh

Amendment immunity as it has done herein.

In determining whether a State official has the benefit of Eleventh Amendment immunity, "the court asks only whether the claim is 'wholly insubstantial and frivolous' and does not reach the merits." 17A Moore's Federal Practice, § 123.40[3][a] n. 43.02 (Matthew Bender 3d ed.). The Supreme Court stated years ago in an election dispute arising from North Carolina:

> the Federal question which [the plaintiff] attempts to raise is so unfounded in substance that we are justified in saying that it does not really exist; that there is no fair color for claiming that his rights under the Federal Constitution have been violated, either by depriving him of his property without due process of law or by denying him the equal protection of the laws.

Wilson v. North Carolina, 169 U.S. 586, 595 (1898). Thus, the inquiry is whether plaintiff's Complaint is insubstantial and frivolous. 17A Moore's Federal Practice, supra.

Plaintiff's first assertion is that his equal protection rights have been violated by application of election rules to him, contending that the rules are applied differently to political parties.

> [T]o succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny.

Williams v. Hansen, 326 F.3d 569, 576 (2003) (citation and corresponding quotation marks omitted). Plaintiff fails to detail how his First Amendment rights have been violated. Plaintiff seeks a declaration from this court declaring unconstitutional North Carolina's

statute setting forth the requirements to run as an unaffiliated candidate and to enjoin the defendants from enforcing the statute. He also seeks injunctive relief against the board to allow his placement on the November 2010 general election ballot, even though he had not complied with the legal requirements for doing so, an issue which is moot as the election has passed.

The core problem with plaintiff's argument is his equating the rights of unaffiliated candidates with the rights of recognized political parties. Defendants' characterization of the process is unchallenged: a recognized party will be able to place a candidate on the ballot in each election cycle because they garner sufficient votes to retain the opportunity to nominate candidates for the ballot; however, even a recognized party's *candidate* does not retain a place on the general election ballot in future elections. The candidate must go through the processes of the party, usually a primary, to achieve a place on the general election ballot. Individual candidates are shown on the ballot as the candidate of the party that nominated them, or as "unaffiliated" if no party nominated them and they obtained the requisite signatures to show support for their candidacy. The state election fund distributes monies to political parties as designated by taxpayers. The funds are never distributed directly to candidates.

This district recently upheld the constitutionality of § 163-122(a) of the North Carolina General Statutes when it was challenged by unaffiliated candidates seeking ballot access in order to run for the United States House of Representatives. North Carolina requires that unaffiliated candidates for district office obtain, on petitions supporting their

candidacy, the signatures of 4% of the registered voters in the district. N.C. Gen. Stat. § 163-122(a)(2)-(4). Honorable Graham C. Mullen, United States District Judge, held that "North Carolina's 4% requirement passes strict scrutiny because it is the only aspect of North Carolina's election requirements that presents a barrier of any significance to an unaffiliated candidate." Greene v. Bartlett, 2010 U.S. Dist. LEXIS 87309, at *15 (W.D.N.C. Aug. 24, 2010).[3]

There is no North Carolina statute or case that holds that an unaffiliated candidate who gained ballot access in one election is thereby qualified in subsequent elections, and there is no case that holds that the United States Constitution requires such a statute. Section 163-122(a)(3) requires that to be placed on the ballot, a candidate must file a written petition signed by qualified voters of a particular district equal to 4% of the total number of registered voters in that district. The petition provides as follows:

> The undersigned registered voters in _____ County hereby petition on behalf of _____ as an unaffiliated candidate for the office of _____ **in the next general election**. The undersigned hereby petition that subject candidate be placed on the appropriate ballot upon compliance with the provisions contained in G.S. 163-122.

N.C. Gen. Stat. § 163-122(b) (emphasis added). Plaintiff's suggested reading of the statute would make him a party unto himself, allowing him to nominate himself for any subsequent ballot based on securing the requisite signatures at any time in his life. Such reading not only contradicts the petition requirement of Section 163-122(b), it runs contrary to the party

---

[3]      This case is presently on appeals to the Court of Appeals for the Fourth Circuit. Greene v. Bartlett, No. 1-2068 (4th Cir. 2010).

system because if the law were as plaintiff suggests, there would be no need for parties. Clearly, plaintiff's argument would defeat the intent of the General Assembly to regulate ballot access, which ensures that an unaffiliated candidate has support of the individuals in a particular district before placing the candidate's name on the ballot, a provision which Judge Mullen determined passes strict scrutiny. Although such decision is not binding, this court adopts Judge Mullen's reasoning.

Plaintiff next contends that unaffiliated candidates are being treated differently from a political party nominee because unaffiliated candidates must be labeled as such when they appear on general election ballots in partisan races. A nominee of a political party is shown as a candidate of the pertinent party on the ballot. See N.C. Gen. Stat. § 163-165.6(d). Identifying a candidate who is running as the nominee of his or her party with such political affiliation and identifying a candidate who is not running as the nominee of a political party as "unaffiliated" is facially accurate and cannot be construed as misleading to the voting public or prejudicial to the candidate.

The word "unaffiliated" is more precise and less confusing even than the word "independent" as a means of identification. As pointed out in defendants' memorandum, several political parties use the word "independent" in their names – currently including America's Independent Party, the National Independent American Party, and the New American Independent Party. While Mr. Brody may want to be identified as "independent," the decision of the state to designate candidates unaffiliated with any state-recognized party as "unaffiliated" cannot be construed as misleading to the voting public or prejudicial to the

candidate.

Plaintiff next contends that state statutes creating the election fund are unconstitutional. Such argument fails to recognize the difference between an individual candidate and a political party. The Fund is authorized by statute in North Carolina's tax code, N.C. Gen. Stat. § 105-159.1, and allows taxpayers to designate a portion of their tax payment to fund elections by choosing among recognized political parties and "unspecified." Id. The statute provides that where contributions are not allocated to a specific party, they should be distributed on a *pro rata* basis among the parties. Id. Distribution of the Fund's revenue to the parties is governed by Article 22B of Chapter 163 of North Carolina's General Statutes. In order to receive funds, the state chair of the party must apply to the State Board to release the funds. N.C. Gen. Stat. § 163-273.41(b). Any funds remaining in the party's name after the election will be held until they can appropriately be disbursed. Id. The purposes for which the funds may be disbursed are set by statute, N.C. Gen. Stat. § 163-278.42, with strict reporting requirements,§ 163-278.43, and criminal sanctions. N.C. Gen. Stat. § 163-278.44. Candidates do not receive the funding, the parties do; thus, plaintiff's claims are without substance.

Plaintiff's complaint challenges other election law provisions. Plaintiff challenges N.C. Gen.Stat. § 163-82.13, which deals with obtaining copies of lists of registered voters, but he does not state how the application of that statute prejudices him. He also fails to state how he is prejudiced by the statute providing that the State Board members are to be appointed from nominations submitted "by the State party chairman of each of the two

political parties having the highest number of registered affiliates as reflected by the latest registration statistics published by the State Board of Elections." N.C. Gen. Stat. § 163-19. Plaintiff stated at the hearing that he were elected governor, he would be required to populate the State Elections Board with democrats and republicans under such law, and could not appoint independents. Such conundrum is, at best, speculative and is insufficient to present a live case or controversy.

In sum, read in a light most favorable to plaintiff, his Complaint challenges state laws that encourage and buttress a two-party political system and challenges the benefits that flow to established parties from such preference. This is, however, insufficient to mount a constitutional challenge as a matter of well settled law:

> States also have a strong interest in the stability of their political systems. This interest does not permit a State to completely insulate the two-party system from minor parties' or independent candidates' competition and influence, nor is it a paternalistic license for States to protect political parties from the consequences of their own internal disagreements. That said, the States' interest permits them to enact reasonable election regulations that may, in practice, favor the traditional two-party system, and that temper the destabilizing effects of party-splintering and excessive factionalism. The Constitution permits the Minnesota Legislature to decide that political stability is best served through a healthy two-party system. And while an interest in securing the perceived benefits of a stable two-party system will not justify unreasonably exclusionary restrictions, States need not remove all of the many hurdles third parties face in the American political arena today.

Timmons v. Twin Cities Area New Party, 520 U.S. 351, 366-367 (1997) (citations and footnote omitted). Plaintiff has not shown any unreasonably exclusionary restrictions.

To avoid defendants' assertion of Eleventh Amendment Immunity, plaintiff was required to show that his claims were not "insubstantial and frivolous" as discussed above.

While plaintiff is clearly not a "frivolous" person and has sincerely undertaken the prosecution of this action and asserted what to him are valid concerns, the court's review of the Complaint compels the conclusion that the claims are legally insubstantial and will allow the assertion of Eleventh Amendment immunity finding that not only the State Board, but defendant Bartlett, are immune from answering these claims. Such same finding also supports a determination that plaintiff has failed to state an actionable claim as a matter of law and the court will also dismiss this action under Rule 12(b)(6).

## ORDER

**IT IS, THEREFORE, ORDERED** that defendants' Motion to Dismiss under Rule 12(b)(3) for improper venue or to transfer venue to the Middle District of North Carolina is **DENIED,** and defendants' Motion to Dismiss (#5) asserted under Rules 12(b)(1) and (6) is **ALLOWED**, and this action is **DISMISSED** for the reasons discussed herein.

### Advice of Appellate Rights

In accordance with  Wilder v. Chairman of the Central Classification Bd., 926 F.2d 367, 371 (4th Cir.)("while not mandated, the preferable practice is to include a statement to all final orders involving *pro se* litigants setting forth the litigants' appellate rights"), cert. denied, 502 U.S. 832 (1991), plaintiff is hereby advised of the right to appeal this decision to the Court of Appeals of the Fourth Circuit in the manner described in Rule 3, Federal Rules of Appellate Procedure, by filing a Notice of Appeal with the Clerk of this Court within the time prescribed in Rule 4, Federal Rules of Appellate Procedure, which is **30 days** from entry of this Order.  Failure to file a Notice of

Appeal within the first 30-day period after entry of judgment requires the filing of a motion for extension of time and a notice of appeal within the second 30-day period after entry of judgment. Fed. R. App. P. 4(a)(5). See United States ex rel. Leonard v. O'Leary, 788 F.2d 1238, 1240 (7th Cir. 1986).

Signed: May 16, 2011

Max O. Cogburn Jr.
United States District Judge